UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC SMITH,

                           Petitioner,               Case No. 18-13146

                                           Hon. Thomas L. Ludington

v.

KEVIN LINDSEY,

                           Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO
APPEAL IN FORMA PAUPERIS**

      Eric Smith ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. Petitioner was

convicted after a jury trial in the Genesee Circuit Court of armed robbery, MCL § 750.529, felon

in possession of a firearm, MCL § 750.224f, and possession of a firearm during the commission

of a felony, MCL § 750.227b. Petitioner was sentenced as fourth-time habitual felony offender to

20 to 30 years for the armed robbery conviction, a lesser concurrent term for the felon in possession

conviction, and a 2-year consecutive term for the felony-firearm conviction.

      Petitioner raises twelve claims in his habeas petition: (1) Petitioner was denied the effective

assistance of trial counsel, (2) Petitioner was denied the effective of assistance of appellate counsel,

(3) insufficient evidence was presented to establish Petitioner's identity as the perpetrator of the

crimes, (4) the prosecutor committed misconduct, (5) the trial court erred in requiring Petitioner

to present a notice of alibi as a precondition for his alibi testimony, (6) the trial court erred in

failing to admit a text message by prosecution witnesses that contradicted trial testimony, (7) the

sentencing guidelines were incorrectly scored, (8) an on-scene identification of Petitioner by the

victim was unduly suggestive, (9) the prosecutor committed additional acts of misconduct, (10)

the state appellate court erred in failing to remand the case for an evidentiary hearing based on co-defendant's affidavit that he saw someone other than Petitioner commit the crime, (11) Petitioner was denied his right to a speedy trial, and (12) Petitioner was entitled to a new trial based on Cassandra Otis' affidavit.

Because all of Petitioner's claims are without merit or barred by his state court procedural default, the petition will be denied. A certificate of appealability and leave to appeal in forma pauperis will also be denied.

## I.

Petitioner was tried with his co-defendant, Anthony Dunbar, for robbing a woman at gunpoint in the parking lot of her apartment complex. A third person, Averee Littlejohn, was arrested with the two men when she was found in possession of a handgun and the victim's stolen cash, but she testified against them as part of a plea bargain.

At Petitioner's jury trial, Desondra Bowman testified that on June 25, 2012, she was living at the Clover Tree Apartment Complex in Flint. ECF No. 11-13 at PageID.497-500. Shortly after 10:30 p.m. she was exiting her car in the complex's parking lot, when a man she later identified as Petitioner approached her. She described the man as 30-35 years old, 6'0" or taller, a scruffy moustache, and wearing a black shirt and black shorts. *Id.* at PageID.505, 514-515. Bowman also noticed a shorter, darker-complected man she later identified as Dunbar wearing a white tank top who appeared to be serving as a lookout. *Id.* at PageID.512-513. Bowman testified that Petitioner said, "I'm not playing with you bitch, give me that stuff," and he pointed a handgun at her. *Id.* at PageID.509. Bowman was afraid for her life. *Id.* at PageID.510. She threw her purse at him and ran into her home. She testified that she had about $200 in her purse, mostly twenties from a check she had recently cashed. *Id.* at PageID.511, 516. Bowman saw the men flee on foot toward the

back of her complex which was in the direction of the nearby Kroger grocery store. ECF No. 11-13 at PageID.523; ECF No. 11-14 at PageID.649-650.

Bowman immediately called 911. ECF 11-13 at PageID.516. A recording of the call was played for the jury and was transcribed into the record. The call recorded communications between the victim and the 911 operators as well as those between the various responding officers. By the end of the relatively short call, Petitioner, Dunbar, and Littlejohn were all taken into custody at a bus stop across the street from the Kroger store, located in the direction the victim described that the perpetrators fled. *Id.* at PageID.519-533.

Mere minutes after she was robbed, Bowman was driven to the bus stop by an officer, where she quickly identified Dunbar as the lookout and Petitioner as the gunman. *Id.* at PageID.537-539. Minutes before, she was asked to identify a different possible suspect, but she said he was not the perpetrator. Bowman testified that the area of the bus stop where she made the identifications was well lit. *Id.* at PageID.541. The next day, Bowman and her sister found her empty purse, empty wallet, and some of the other items that had been in her purse scattered on the path between her apartment complex and the Kroger parking lot leading to the bus stop. *Id.* at PageID.542-543.

Bowman's identification of her assailants at the preliminary examination was less certain. *See* ECF No. 11-2 at PageID.220-221. At trial, she explained that at the time of the preliminary examination, which was held about two weeks after the robbery, she was still scared and was trying to forget about the incident. ECF No. 11-13 at PageID.544-545, 555-557.

Bowman revealed on cross-examination that the trial prosecutor had emailed her a photo of Petitioner two days prior to trial. *Id.* at PageID.570-571. The prosecutor conceded that it was improper for him to have sent the email, and Bowman was made available for additional cross-

examination the following trial date. ECF No. 11-14 at PageID.628-629. Defense counsel attacked the victim's in-court identification testimony on this basis, but Bowman testified that she was identifying Petitioner based on her observations during the crime and not as a result of the email. *Id.* at PageID.643.

The prosecution called several police witnesses. The officers described the area where the incident occurred. The victim was robbed in the parking lot of her apartment complex, the Cloverleaf Apartments. *Id.* at PageID.696, 698-699. A trail on the south side of the complex led to the parking lot of a strip mall containing the Kroger store. *Id.* at PageID.509, 744-745; ECF No. 11-13 at Page.ID.542. Traveling further south through the parking lot of the grocery store a person would reach Corunna Road, where there is a bus stop across the street. ECF No. 11-13 at PageID.608; ECF 11-14 at Page.ID.673, 675-676, 742, 744-745.

One of the officers hearing the 911 dispatch, Officer Kimes, was driving on Corunna Road, the same street as the bus stop, at the time of the call. Rather than go the apartment complex, he decided to head straight to the Kroger parking lot where the suspects were reported to be headed. ECF No. 11-14 at PageID.655-656. When he entered the parking lot, he saw a black male wearing a black shirt and black shorts who matched the description of the gunman he heard over the dispatch. *Id.* at PageID.657. The suspect was walking fast through the parking lot coming from the direction of the Cloverleaf Apartments. *Id.* The suspect kept looking back over his shoulder towards the direction of the apartments. *Id.* He eventually crossed Corunna Road and waited at the bus stop. *Id.* at PageID.656, 684-685.

Officer Kimes noticed another individual, later identified as Dunbar, standing nearby. *Id.* at PageID.687-688, 701. A woman, later identified as Littlejohn, was standing on the bike path that ran in front of the bus stop. *Id.* at PageID.678, 681, 688-689, 700. The officer saw Littlejohn

sit down on the bench next to Petitioner. *Id.* at PageID.661, 663, 678. Officer Kimes drove up to the bus stop and asked Petitioner to provide him identification. *Id.* at PageID.658, 660. Petitioner complained about being harassed and then gave the officer a false name. *Id.* at PageID.658. Kimes waited for backup to arrive before Dunbar and Littlejohn were detained. *Id.*

Officers found $210 in cash hidden in Littlejohn's bra. *Id.* at PageID.662-623, 667, 716-717. The cash was in the denominations reported stolen by Bowman. *Id.* at PageID.668-669. They also recovered a handgun from her purse that matched the general description of the weapon reported by the victim. *Id.* at PageID.662, 664. No usable fingerprints were found on the handgun. *Id.* at PageID.779-780.

Meanwhile, another police officer, Officer Chisa, brought Bowman to the well-lit bus stop. at PageID.743-744. According to Officer Chisa, Bowman immediately identified Dunbar and Petitioner as being the two men involved in the robbery, but she did not recognize Littlejohn. *Id.* at PageID.744-750. Bowman did not hesitate at all with her identification of Petitioner. *Id.* at PageID.751. Bowman told Officer Chisa that Petitioner was the gunman and Dunbar was the lookout. *Id.* at PageID.744.

The prosecution entered into an agreement with Littlejohn whereby her sentencing would be delayed until after Petitioner and Dunbar's trial. Littlejohn's case would be dismissed after she completed a probationary term. *Id.* at PageID.732. Littlejohn testified at trial that she had been in a sexual relationship with Petitioner, but she never stayed at his home. *Id.* at PageID.733. On the day of the incident, she took a bus to meet Smith and Dunbar at a party. *Id.* at PageID.734-735, 739. That night, they ended up at "Chuck's" house in Hunter's Ridge Apartments, which are located just northeast of the Cloverleaf Apartments. *Id.* at PageID.740-742. After visiting Chuck,

the three walked through the parking lot of the Cloverleaf Apartments on their way to the bus stop by the Kroger. *Id.* at PageID.742.

Littlejohn testified that she separated from the two men and stopped at the Kroger to use the restroom, then she continued to the bus stop. *Id.* at PageID.742-743. Petitioner arrived at the bus stop soon afterwards. *Id.* at PageID.745, 747. Before Dunbar arrived, Petitioner told her that Dunbar had snatched a woman's purse. *Id.* at PageID.747.  Dunbar arrived at the bus stop and gave Littlejohn a gun and money to hold. *Id.* at PageID.749-751.

On cross-examination, Littlejohn said that she did not know Petitioner's last name, though she had been involved with him for about a year. *Id.* at PageID.759. Relevant to Petitioner's claims, Littlejohn denied telling Cassandra Otis or Diamond Smith that she was misleading police about what happened, and that she would say whatever it took to stay out of jail. *Id.* at PageID.761.

Later during trial, relevant to another one of Petitioner's claims, Petitioner wanted to call Quentin Kayhee to testify that Littlejohn sent him a text message that someone other than Petitioner committed the crime. ECF No. 11-15 at PageID.812-813; ECF No. 11-16 at PageID.832-836. Littlejohn was called to the stand again, and she denied that she ever sent such a text message. ECF 11-16 at PageID.848-849. Littlejohn claimed that she was not the only person who had access to the cell phone allegedly used to send the text. *Id.* at PageID.849-851. The trial court prohibited Kayhee's testimony on the grounds that the text message was not authenticated as coming from Littlejohn. *Id.* at PageID.855-856.

Petitioner called Sylvia Miller, the mother of his children, in the defense case. *Id.* at PageID.846. She testified that she had been Petitioner's girlfriend since 1996. *Id.* at PageID.846. She noted that Petitioner had prominent tattoos on his arms and neck at the time of the offense, though the victim did not mention them in her description of the gunman. *Id.* at PageID.846-847.

She testified that she knew Littlejohn as a person that Petitioner sold marijuana to, but she was not aware of any sexual relationship between them, and she did not know Dunbar. *Id.* at PageID.848-849. She had never seen Petitioner with a firearm. *Id.* at PageID.850-851.

Diamond Smith testified that she used to live at the same apartment complex as Petitioner and Littlejohn. *Id.* at PageID.858-859. She described Sylvia Miller as her friend. *Id.* at PageID.860. Smith testified that during the Summer of 2012, she heard Littlejohn say that she would tell the police whatever she needed to in order to stay out of jail, and that she was not involved with the robbery. *Id.* at PageID.861-865. Diamond did not claim to hear Littlejohn say whether she was lying or telling the truth to police, but she said that the victim did not know who robbed her. *Id.* at PageID.864-866.

Diamond testified that on August 17, 2012, she wrote a letter for Sylvia Miller about what she heard Littlejohn say. *Id.* at PageID.866-867. A copy of the letter was signed by Cassandra Otis, her mother, and it was notarized on September 29, 2012. *Id.* at PageID.872.

Petitioner testified in his own defense. He said that at about at about 3:00 p.m. on the day in question, he went shopping with Sylvia Miller. *Id.* at PageID.884. Miller then drove him to Hunter's Ridge Apartments where she dropped him off to visit a friend named Andre. *Id.* at PageID.884-886. The two smoked marijuana and played a video game. At 10:30 p.m., Petitioner left Andre's to catch a 10:45 p.m. bus home. *Id.* at PageID.886. While he was waiting on the bench at the bus stop, Littlejohn and the man he later learned was Dunbar appeared. *Id.* at PageID.887. He heard Littlejohn say, "Which way Chuck go." *Id.* A few minutes later, the police arrived, and he was arrested.

Petitioner testified that he knew Littlejohn from selling her small amounts of marijuana to her, and Littlejohn's appearance at the bus stop was simply an unfortunate coincidence. *Id.* at

-7-

PageID.887-888, 895. He denied ever being involved with Littlejohn sexually. *Id.* at PageID.888. Petitioner testified that he was not in financial difficulty, so it would not make sense for him to have committed an armed robbery. He denied knowing "Chuck" or Dunbar, and he denied walking through the victim's parking lot on the night of the incident. *Id.* at PageID.889. Petitioner said the first time he saw the victim was at the preliminary examination. *Id.* at PageID.890.

Petitioner testified that it was noteworthy that Bowman did not claim the robber wore white shoes if he was the perpetrator because he thought she surely would have seen his large all-white size fourteen shoes against the dark backdrop of his clothing. *Id.* at PageID.892. Petitioner admitted that he gave false names to the police, explaining that he had traffic and child support warrants. *Id.* at PageID.891-892. He also admitted writing Bowman a letter, but he explained that he did not threaten her and wanted to inform her that she was mistaken about her identification. *Id.* at PageID.908, 911.

Petitioner acknowledged a handwritten alibi notice made on the first morning of trial that said he was at the Clover Tree Apartments for several hours before happening upon Littlejohn and Dunbar at the bus stop. He explained that his trial counsel wrote out the alibi notice and made a mistake. He explained that he was visiting his cousin Andre Johnson on the evening of the incident at Hunter Ridge, but Johnson had since moved to Atlanta, and he did not have his new address. *Id.* at PageID.901-909, 917.

In rebuttal, the prosecutor called Littlejohn. She denied telling Diamond that she would say anything to stay out of jail. *Id.* at PageID.920. A detective testified that Diamond told him she had not discussed the matter with Littlejohn before writing her letter. *Id.* at PageID.923-925.

Another detective testified that when he questioned Petitioner about his alibi defense in order to investigate the claim, Petitioner was evasive and seemed not to have any interest in giving

them details to help locate Andre. Petitioner did not even bother to give police Andre's last name. *Id.* at PageID.928-930. The officer confirmed that when he spoke to Petitioner in the presence of the prosecutor and defense counsel on the first morning of trial, Petitioner said that he was at the Cloverleaf Apartments and not Hunter Ridge, as he claimed during his testimony. *Id.* at PageID.930.

Based on this evidence, the jury found Petitioner guilty of the offenses indicated above.

Following sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal filed by his appellate attorney raised the following claims:

I. Defendant's convictions fail the sufficiency of evidence test. Reversal is therefore warranted, US Const Am XIV.

II. An erroneous evidentiary ruling by the trial court led to disclosures which resulted in the Defendant being denied his right to a fair trial. A new trial is warranted.

III. An erroneous evidentiary ruling denying admission of a text message denied Defendant his right to present a defense and to a fair trial. A new trial is warranted.

IV. Defendant was denied a fair trial by prosecutorial misconduct. A new trial is warranted.

V. Defendant is entitled to a re-sentencing because guidelines error altered the sentencing range.

Petitioner also filed his own pro se supplemental brief where he raised three additional claims:

I. Defendant Smith was subjected to an on the scene identification procedure that was so unduly and unnecessarily suggestive and conducive to irreparable mistaken identity that it amounted to a denial of his state and federal right to due process.

II. Defendant was denied the effective assistance of trial counsel in violation of the U.S. Constitution under the Sixth Amendment requiring this court to grant Defendant a new trial.

III. The prosecutor committed prosecutorial misconduct which deprived Defendant of a fair trial.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Dunbar*, No. 315991, 2014 WL 6852973 (Mich. Ct. App. Dec. 4, 2014).

Petitioner did not file an application for leave to appeal this decision in the Michigan Supreme Court. ECF No. 11-28. Petitioner explains that his appellate attorney had misinformed him regarding the filing of a pro se motion for reconsideration in the Michigan Court of Appeals, causing him to miss the filing deadline for the Michigan Supreme Court.

Petitioner returned to the trial court and filed a motion for relief from judgment. His initial pleading raised six claims:

> I. Was Mr. Smith denied the effective assistance of counsel on direct appeal, where appellant counsel failed to file his motion for reconsideration in the Court of Appeals, causing Defendant's Michigan Supreme Court deadline to elapse and procedurally barring him from further appellate review?

> II. Is Mr. Smith entitled to a new trial, or at least a remand for an evidentiary hearing, based on newly discovered affidavits from codefendant Anthony Dunbar?

> III. Is Mr. Smith entitled to a new trial, or at least an evidentiary hearing, based on newly discovered affidavit from Cassandra Otis?

> IV. Was Mr. Smith denied his constitutional right to a speedy trial?

> V. Was Mr. Smith denied the effective assistance of counsel, where appellant counsel failed to perform a proper investigation, present newly discovered affidavits, or raise meritorious issues on direct appeal?

> VI. Has Mr. Smith satisfied the good cause and prejudice requirements of MCR 6.508(D)?

Petitioner also filed a supplemental brief in support of his motion for relief from judgment that raised an additional seven claims:

> I. Mr. Smith was denied his rights to due process where the evidence produced at trial was insufficient to sustain the convictions.

II. Mr. Smith was denied his rights to present a defense and the privilege against self-incrimination where he was required to file an alibi notice before he could testify that he was not present at the crime.

III. Mr. Smith was denied his right to present a defense and a fair trial where the trial court denied the admission of an exculpatory text message.

IV. Mr. Smith was denied his due process rights with prosecutorial misconduct where the prosecutor introduced an unduly suggestive identification procedure; improperly influenced testimony; demanded Smith file an alibi notice to testify; and argued facts not in evidence.

V. Mr. Smith was denied his rights to due process where he was subjected to an unduly suggestive on-scene show-up identification procedure.

VI. Mr. Smith was denied his rights to effective assistance of counsel where trial counsel failed file [sic] a motion to suppress the identification; failed to request an adjournment to produce vital witnesses; and failed to interview or call crucial witnesses.

VII. Mr. Smith was denied his rights to due process where an error in the scoring of the guidelines altered the sentencing range.

The trial court denied the motion for relief from judgment for Petitioner's failure to satisfy the procedural requirements of Michigan Court Rule 6.508(D)(2) and (3). ECF No. 11-26 at PageID.1223.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, apparently raising the same claims. The Michigan Court of Appeals denied the application for leave to appeal for "failure to establish that the trial court erred in denying his motion for relief from judgment." ECF No. 11-32 at PageID.1648. Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but his application was denied for failure to demonstrate entitlement to relief under Michigan Court Rule 6.508(D). ECF No. 11-33 at PageID.1905.

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court

adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id.* A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.

### A.

Two of Petitioner's claim center on the fact that the prosecutor sent an email containing Petitioner's photograph to Bowman a few days before trial. This is the primary focus of Petitioner's reply brief. The prosecutor explained at trial that he sent the email as part of his trial preparation, done to see whether the victim would identify Petitioner at trial. Petitioner, on the other hand, notes that the victim had difficulty identifying him at the preliminary examination, and sending the photo to the victim amounted to an unduly suggestive pretrial identification procedure performed to ensure her in-court identification of him.

Part of Petitioner's first claim (asserted in the Michigan Court of Appeals in his pro se brief) asserts that his trial counsel was ineffective for failing to take more aggressive action after he learned about the email. He asserts that his counsel should have sought suppression of the victim's identification, moved for a hearing to determine whether the in-court identification was tainted by the email, or moved for a mistrial. Part of Petitioner's fourth claim (asserted in the Michigan Court of Appeals in the brief filed by counsel) asserts that sending the email amounted to prosecutorial misconduct, rendering Petitioner's entire trial fundamentally unfair.

The Michigan Court of Appeals denied the prosecutorial misconduct aspect of the claim on the merits during Petitioner's direct appeal, and it summarily denied the related ineffective assistance of counsel claim in a footnote:

> After it became clear that the prosecutor had sent Smith's photo to the victim shortly before trial, Smith did not move for suppression of the victim's in-court identification, demand a *Wade* hearing, or request a mistrial, even after the prosecutor conceded that his conduct was improper. Instead, the trial court permitted Smith an additional opportunity to cross-examine the victim about her identification of him as the gunman. Because Smith failed to request a *Wade* hearing, the trial court did not make any findings regarding the victim's ability to identify him independent of the email photo. Accordingly, we must examine the available record to determine whether the email photo likely affected Smith's substantial rights because the victim lacked an independent basis for her in-court identification of him. The following factors are used to determine whether an independent basis exists for the admission of an in-court identification:
>
> > (1) [P]rior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v. Davis*, 241 Mich. App. 697, 702–03 (Mich. Ct. App. 2000).]

According to the record developed at trial, the victim looked at the gunman's face during the offense when he asked her for the time, and told her, "I'm not playing with you, bitch" while pointing a gun in her face. Briefly after she was robbed, the victim provided a description of the gunman's general physical appearance and clothing, which closely resembled Smith's appearance and clothing at the time of his arrest.

Before identifying Smith, the victim ruled out another suspect that the police had asked her to view. The victim was thereafter taken to a bus stop near the crime scene where she identified Smith as the gunman who robbed her. The victim also identified Smith at trial, and testified that her identification was not based on the email photo she received before trial, but rather on her independent memory of the offense. The victim also offered an explanation for her hesitancy to affirmatively identify defendant Smith at the preliminary examination.

Together, these factors support the existence of an independent basis for the victim's identification testimony. Because the record contains an independent basis for the victim's identification of Smith, and the trial court afforded Smith ample opportunity to cross-examine the victim on her identification testimony—including the effect, if any, of the email photograph—Smith has not established that the prosecutor's improper conduct in sending the email photo to the victim shortly before trial affected his substantial rights.

___

[11] Defendant also makes a multitude of arguments in his Standard 4 brief, some of which his attorney raised at trial, which we have rejected. The remaining issues are totally without merit.

*Dunbar*, 2014 WL 6852973, at *5-7, and n. 11.

It was undisputed at trial that the prosecutor's act of sending the email to the victim to see whether she would be able to identify Petitioner was improper. The prosecutor, a former defense attorney who recently had been appointed as a special prosecutor, conceded that he should not have sent the email. *See* ECF 11-14 at PageID.628. After the concession, the trial court afforded defense counsel an additional opportunity to cross-examine the victim regarding her identification of Petitioner. *Id.* at PageID.629. Defense counsel availed himself of that opportunity. *Id.* at PageID.639-641.

The decision of the state court to deny relief did not contravene clearly established Supreme Court law. First, despite the prosecutor's concession, no United States Supreme Court case clearly establishes a rule preventing prosecutors from sending a victim a photo of the defendant prior to trial. "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006).

Of course, such an act carries with it the risk that any subsequent in-court identification might be suppressed by the trial court if the act created a "substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 201 (1972). If in-court identification testimony is nevertheless reliable, however, then suppression on account of an unduly suggestive pretrial procedure is not warranted. The "corrupting effect of the suggestive identification" must be weighed against factors indicating that the eyewitness identification is reliable, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Here, the state court reasonably found that suppression was not warranted because Bowman's identification testimony was nevertheless reliable. Bowman testified that she did not identify Petitioner as a result of the email but based on her observations when she was robbed. ECF No. 11-14 at Page.ID.643. As the state court noted, Bowman was looking at Petitioner's face when he asked for the time and then demanded her money at gunpoint. She described his physical features and the clothing he was wearing. Petitioner was apprehended minutes later, with the whole

episode recorded during the 9-1-1 call. His appearance matched the victim's description given minutes earlier. When detained, he was seated on a bench next to a woman he knew, who had a handgun consistent with Bowman's description. The woman had the cash taken from Bowman hidden in her bra. Bowman was driven to the bus stop—again minutes after being robbed—where she quickly and with certainty Petitioner as the gunman. Given the strength of her identification testimony, a motion to suppress would have been denied, as would have a motion for a mistrial.

It follows that counsel was not ineffective for failing to move for suppression or for a mistrial. Those remedies would have been denied. The failure to raise a meritless claim does not constitute ineffective assistance of counsel. See, e.g., *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

Petitioner has therefore failed to demonstrate entitlement to habeas relief on account of the email sent by the prosecutor to the victim prior to trial.

## B.

Petitioner asserts in his second claim that his appellate attorney rendered ineffective assistance of counsel. He asserts that counsel failed to obtain tether records that would have supported his claim that Littlejohn sent the text message, indicating that Petitioner was innocent as discussed in Section E of this Opinion below, and not him. He also asserts that his counsel failed to present exculpatory affidavits during Petitioner's direct appeal, failed to assist Petitioner in filing a motion for reconsideration after the Michigan Court of Appeals issued its opinion, failed to copy the trial transcripts for Petitioner to assist in his preparation of a pro se brief, and misled Petitioner into believing that his pro se motion for reconsideration was filed. None of these claims merit relief.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). As will be discussed below, Petitioner's claim regarding Littlejohn's alleged message to Kayhee is without merit. Even if tether records could show that Petitioner did not send the text message, it would not change the fact that Littlejohn was not in exclusive control of the cellphone and denied sending the message.

Similarly, affidavits by Otis and Dunbar do not support any of Petitioner's legal claims for relief. He does not develop an argument how these materials were necessary for the presentation of the claims raised by his appellate counsel. The fact that Otis believed Littlejohn recanted was presented at trial. Also, the fact that Dunbar executed an affidavit proclaiming his own innocence and that "Chuck" robbed the victim was the theory of defense presented at trial. Petitioner has not shown a reasonable probability that had these materials been used by his counsel that there would have been a more favorable outcome on appeal.

Next, Petitioner claims that appellate counsel was ineffective for failing to provide him with transcripts and otherwise hampered his efforts to file pro se pleadings during his direct appeal. A criminal defendant, however, has no federal constitutional right to self-representation on direct appeal. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 163 (2000). Thus, there is no constitutional entitlement to submit a pro se appellate brief on direct appeal in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). By

accepting the assistance of counsel on appeal, Petitioner waived his right to present *pro se* briefs and other pleadings during his direct appeal. *Myers v. Johnson*, 76 F.3d 1330, 1334–35 (5th Cir. 1996). Any failure by appellate counsel to provide petitioner with the trial transcripts or take other actions to facilitate the filing of pro se pleadings, therefore, did not violate Petitioner's constitutional rights. *See Willis v. Lafler*, 2007 WL 3121542, * 18 (E.D. Mich. Oct. 24, 2007).

Petitioner is not entitled to relief on his second habeas claim.

## C.

Petitioner asserts that constitutionally insufficient evidence was presented at his trial to prove his identity as the perpetrator of the crimes beyond a reasonable doubt. The Michigan Court of Appeals rejected the claim on the merits:

> Smith wrongly asserts that the prosecution presented insufficient evidence to establish his identity as the person who robbed the victim. The victim identified Smith as the gunman who robbed her, both when the police brought her to a nearby bus stop briefly after the offense, and again at trial. The victim had previously ruled out another suspect the police asked her to view. Although the victim was ambivalent about identifying Smith at the preliminary examination, she explained at trial that her ambivalence was caused by defendant's behavior—the victim said she felt intimidated by a "hissy fit" Smith threw when she attempted to identify him.

> Moreover, the jury heard other testimony that supported the reliability of the victim's identification testimony, such as her descriptions of the perpetrators' clothing and appearances to the 911 operator and a responding officer after the robbery. Her descriptions of the gunman's clothing and facial hair accurately described Smith's clothing and facial hair at the time of his arrest. Although Smith argues that the victim failed to mention other distinguishing marks and features about him, and inaccurately described him as dark-skinned, it was up to the jury to determine what effect, if any, those matters had on the weight and reliability of the victim's identification testimony. And, again, we defer to the trier of fact's findings regarding the credibility of identification testimony. *Davis*, 241 Mich. App. at 700. The victim's testimony was thus sufficient to establish Smith's identity as the gunman beyond a reasonable doubt.

*Dunbar*, 2014 WL 6852973, at *2.

This decision was reasonable. The relevant standard for sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). Habeas relief is warranted on a sufficiency of the evidence claim only if the state court's application of this standard was unreasonable. *See* 28 U.S.C. § 2254(d)(2). The court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The analysis here is straightforward. The victim identified Petitioner as the man who robbed her. That identification was corroborated by the fact that Petitioner matched the description of the perpetrator given to the 9-1-1 operator, by Petitioner being found in close proximity to the scene of the crime minutes later in the direction described by the victim, and by Petitioner being found seated on a bench next to an individual concealing a handgun matching the description given by the victim and in possession of her stolen cash. The question whether to believe that identification testimony beyond a reasonable doubt was one for the jury to decide, and it is beyond the scope of review for a Court reviewing a sufficiency of the evidence claim. *Id.* The claim is therefore without merit.

### D.

Petitioner's fifth claim asserts that the trial court erred in compelling him on the first morning of trial to provide the prosecutor with the details of his alibi defense. He asserts that the erroneous ruling resulted in him making a statement to police that was used to impeach his trial testimony. The Court of Appeals rejected the claim on the merits during Petitioner's direct appeal:

Before trial, the prosecutor objected to Smith's presentation of an alibi defense, including through his own testimony, because he had not filed a notice of alibi as required by MICH. COMP. LAWS § 768.20. The trial court held that Smith could testify in support of his alibi if he provided a written notice stating the substance of his alibi. Counsel's notice stated that Smith was with a cousin at the Clover Tree apartment complex at the time of the robbery. A police detective then questioned Smith about his alibi. Smith told the officer that he was with his cousin, "Dre," at the Clover Tree apartments, but he denied knowing "Dre's" full or last name. Smith eventually stated that Dre was Andre Johnson, that they were not really cousins, and that Johnson was unlikely to testify because of outstanding warrants.

* * *

Here, defendant incorrectly claims that the trial court erred when it held that § 768.20 applies when the defendant is the only witness testifying in support of an alibi defense. There is nothing in the statute that suggests that the Legislature entertained any such exemption, and defendant's assertion to the contrary violates the proscription against reading terms into a statute that are not expressed by the statutory language. *Acosta–Baustista*, 296 Mich. at 408. The trial court thus correctly applied § 768.20 to defendant and forced him to comply with its mandates.[4]

---

[4] We also reject Smith's argument that the trial court improperly compelled him to submit to police questioning on his alleged alibi, in violation of his Fifth Amendment rights. *People v. Wyngaard*, 462 Mich. 659, 671-672 (2000. There is no evidence that he was compelled to submit to police questioning. The detective at the questioning testified that he asked defense counsel if he could discuss the alibi with Smith, thus indicating that Smith agreed to waive his Fifth Amendment right with counsel's consent and approval.

*Dunbar*, 2014 WL 6852973, at *2-5, and n. 4.

This decision did not contravene clearly established Supreme Court law. A criminal defendant has an established constitutional right to present witnesses in his defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Similarly, "a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise

inadmissible under the standard rules of evidence. *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).

Here, as indicated, the prosecutor objected on the first morning of trial to the presentation of an alibi defense because a notice of alibi had not been filed as required by Michigan law. ECF No. 11-12 at PageID.459-460. Defense counsel indicated that he did not intend to present alibi witnesses, but that Petitioner might testify that he was not present at the scene of the crime. Defense counsel indicated that no notice of alibi was required for Petitioner's own testimony, and that he did not file one because the person Petitioner was with at the time of the crime had warrants for his arrest and was not willing to testify. *Id.* at PageID.467-468. The trial court ruled that it would permit Petitioner to testify to an alibi, but that the defense was required to provide the prosecutor with details of the alibi. *Id.* Petitioner and his counsel then provided a handwritten notice of alibi, apparently indicating that Petitioner was at an apartment in the Cloverleaf complex with another person named "Andre" or "Dre" at the time of the offense. *Id.* at PageID.483.

Later during trial, a detective testified that Petitioner did not cooperate during a subsequent conversation in the hallway of the courthouse that included the detective, the trial prosecutor, Petitioner, and Petitioner's counsel. The detective had secured defense counsel's permission to talk to Petitioner, and Petitioner agreed to participate in the conversation. ECF No. 11-16 at PageID.928. The detective relayed Petitioner's reluctance to give details about his alibi witness's last name or where he lived. *Id.* at PageID.929. The detective testified that he was certain Petitioner said that he was with Andre at the Cloverleaf Apartments and not at Hunter's Ridge, as described by Petitioner during his testimony. *Id.* at PageID.930.

Petitioner asserts that this information, which was used to impeach his trial testimony, would not have been elicited but for the trial court's erroneous ruling that he was required to

provide an alibi notice if he wanted to testify that he was somewhere other than the scene of the crime. Nothing in the trial court's order, however, compelled Petitioner to talk to the detective. Rather, Petitioner chose to do so on the advice of counsel after the prosecutor sought to investigate the alibi defense.

The Michigan Court of Appeals' ruling that Petitioner was required to provide a notice of alibi in advance of his alibi testimony is a construction of state law that this Court cannot second-guess. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). The Supreme Court has held that a state's interest in the orderly conduct of a criminal trial is sufficient to justify enforcing procedural rules relating to the presentation of evidence. *Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988). The Court indicated that in making a determination as to whether a defendant's rights would be violated by a trial court's exclusion of alibi testimony, a court should balance the defendant's right to have witnesses testify on his behalf against the "countervailing public interests." *Id*. at 414–15. The Court recognized the validity of the prosecution's interest in "protecting itself against an eleventh-hour defense." *Id*. at 412 (quoting *Williams v. Florida*, 399 U.S. 78, 81–82 (1970)).

In light of this precedent, it was reasonable for the trial court to condition Petitioner's alibi defense testimony on his providing the alibi notice on the first morning of trial, when strict adherence to the statute would have allowed for preclusion of the defense altogether. The court's compromise solution to Petitioner's failure to file a timely alibi notice reasonably balanced the competing interests presented. The Michigan Court of Appeals, therefore, did not unreasonably reject this claim.

Any additional prejudice resulting from inconsistencies in Petitioner's statement to the detective were the result of his own choice to speak with them and his choice to testify to facts

other than what he told the detective. The trial court did not order him to make a statement, much less to make one that was inconsistent with what he planned on testifying to in his defense. No Fifth Amendment claim is presented given the fact that the statement was made in the presence of counsel with Petitioner's assent.

Finally, in his reply brief, Petitioner further develops his ineffective assistance of counsel claim to assert that his counsel should have done more to secure the presence and testimony of Andre as an alibi witness, now fully identified as one Andre Johnson. Counsel explained prior to trial that the witness had warrants for his arrest and was unwilling to testify. Petitioner suggests that he could nevertheless have been compelled to testify. But Petitioner failed to present either the state court or this Court with an affidavit or other offer of proof from Johnson that he would have testified to facts in support of an alibi defense. The absence of evidence cannot overcome the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (internal quotation omitted). This claim of ineffective assistance of counsel is therefore without merit.

Petitioner's claims related to his alibi defense are without merit.

## E.

Petitioner's sixth claim asserts that he was denied his right to present a defense when the trial court denied his request to present evidence that Littlejohn sent a text message to Quentin Kayhee admitting that someone other than Petitioner committed the robbery. The Michigan Court of Appeals rejected the claim on the merits, finding that the testimony was properly excluded under the Michigan Rules of Evidence because Petitioner could not authenticate the alleged text message:

> Smith says that the trial court erred when it excluded a text message purportedly sent from Littlejohn to Quentin Kayhee stating, "tell Eric I'm sorry, but I know Chuck" to explain why she testified against defendant Smith. Once again, Smith's claim is incorrect. To admit the text message under Michigan Rule

of Evidence 901(a), Smith, as a proponent of the evidence, needed to present evidence sufficient to support a finding that the text message was what Smith said it was—namely, a text message sent by Littlejohn to Quentin Kayhee. Moreover, because the message was offered to show that Littlejohn had falsely accused Smith, its relevance depended on a showing that it was actually sent by Littlejohn. Smith presented evidence that the text message came from a number assigned to Littlejohn's phone. Although that evidence was sufficient to support a finding that the text message was transmitted from Littlejohn's phone, that alone did not support a finding that it was Littlejohn who sent the message. And there was substantial evidence that Littlejohn did not send the message: Littlejohn testified that she did not have exclusive control of her phone at the time the text message was sent, she denied sending the message, the message did not appear in the outbox folder on her phone, and she explained that she did not even have Kayhee's phone number or any reason to have his number. Under these circumstances, defendant Smith failed to satisfy his burden under Rule 901(a) of presenting evidence sufficient to support a finding that the text message was sent by Littlejohn. Accordingly, the trial court properly excluded the message on the ground that it had not been authenticated.

*Dunbar*, 2014 WL 6852973, at *6 (footnote omitted).

This decision was reasonable. As indicated above, the right to present a defense is not unfettered – a defendant may be held to comply with state rules of evidence and procedure without violating his constitutional trial rights. *Scheffer*, 523 U.S. at 308. Here, the trial court did not prevent Petitioner from presenting a defense that Littlejohn was being untruthful. Petitioner was free to, and did, cross-examine her and suggest that she fabricated her allegations against him. The trial court only precluded Petitioner from introducing the purported text message because she denied she sent it, and Petitioner could not otherwise authenticate it.

The trial court's ruling resulted from a straightforward application of a well-established evidentiary rule. Michigan Rule of Evidence 901(a) requires that a party seeking admission of a document, such as text message, authenticate it with sufficient evidence to "support a finding that the [document] is what the proponent claims it to be." *People v. Howard*, 575 N.W.2d 16, 29–30 (Mich. Ct. App. 1997). "The authentication requirement serves 'legitimate interests in the criminal trial process,' and is neither arbitrary nor disproportionate." *United States v. Almonte*, 956 F.2d

27, 30 (2nd Cir. 1992) (citing *Rock v. Arkansas*, 483 U.S. 44, 55–56 (1987)). Littlejohn denied sending the text message, and she testified that other people had access to the cellphone when the text message was alleged to have been sent and her belief that Petitioner himself might have sent the message from her cellphone. *See* ECF No. 11-16 at PageID.849.

The trial court's decision to exclude the message on the ground that it could not be authenticated did not violate Petitioner's constitutional right to present a defense. The Court of Appeals' decision to uphold that ruling did not involve an unreasonable application of Supreme Court law.

**F.**

Petitioner's seventh claim asserts that the trial court incorrectly scored the sentencing guideline offense variables. On direct appeal, Petitioner raised this claim solely on grounds based on his interpretation of how the offense variables should have been scored under Michigan law. On state post-conviction review, Petitioner renewed his challenge at least in part under the Sixth Amendment, asserting the guidelines scoring was based on facts not found beyond a reasonable doubt by the jury.

As an initial matter, the contention that the guidelines were scored incorrectly under Michigan law is simply not a cognizable claim on federal habeas review. *Austin v. Jackson*, 213 F.3d 298, 300–01 (6th Cir. 2000).

As for the claim that the scoring violated the Sixth Amendment, Petitioner was sentenced on April 10, 2013, before either *Alleyne v. United States*, 570 U.S. 99 (2013), or *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), were decided. Petitioner did not raise a Sixth Amendment claim on direct appeal, so the Michigan Court of Appeals was not asked to apply *Alleyne* to Petitioner's sentencing claim.

In any event, at the time of Petitioner's direct appeal, it had not been clearly established that Michigan's guidelines scheme in effect at the time violated the Sixth Amendment. *See Chontos v. Berghuis*, 585 F.3d 1000, 1001–02 (6th Cir. 2009). The decision of the state court on direct appeal therefore could not have run afoul of clearly established federal law – first, because it was not asked to apply federal law, and second, because no Sixth Amendment right in relation to the scoring of Michigan's sentencing guidelines had yet been established.

Petitioner attempted to recast his argument as a Sixth Amendment claim in his motion for relief from judgment, but Michigan law extended its holding under the Sixth Amendment in *Lockridge* only to cases where the issue had been raised and preserved on direct review. *Id.* at 523–24. No federal authority required the state to make *Alleyne's* holding retroactive to cases on collateral review. See *In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014).

Petitioner's sentencing guideline claim therefore does not present a basis for granting habeas relief.

## G.

Petitioner's eighth claim asserts that the identification procedure at the bus stop was unduly suggestive, and therefore admission of the victim's in-court identification testimony should have been suppressed. This issue was raised by Petitioner on direct appeal in his pro se supplemental brief.

As indicated in the context of the email discussed above, a pretrial identification procedure raises due process concerns "only when law enforcement officers use [one] that is both suggestive and unnecessary." *Williams v. Bauman*, 759 F.3d 630, 638 (6th Cir. 2014) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012)). While driving the victim to the bus stop to view Petitioner and Dunbar was certainly more suggestive than a police station line-up would have been,

there were compelling reasons for the police to take the actions they did. A gunpoint robbery had occurred minutes earlier. The armed perpetrator was at large, and because he fled on foot minutes earlier, police had every reason to believe he was still in the area. When they found men fitting the description given by the victim, it was necessary and helpful to seek her assistance to see whether the men could be cleared or should be detained. They had already briefly detained one such individual and cleared him before Petitioner and Dunbar were spotted. Indeed, any fair reading of the entire transcript of the 9-1-1 call fully explains and justifies the police conduct. *See* ECF No. 11-13 at PageID.519-533.

Courts in similar circumstances have authorized such a practice. *See Bruner v. Perini*, 875 F.2d 531, 534–35 (6th Cir. 1989) (no due process violation where bank employee who had face-to-face contact with a robber and gave a description of the robber to police was taken to the scene of apprehension of a suspect about half hour after the robbery); *Stidham v. Wingo*, 482 F.2d 817, 818–19 (6th Cir. 1973) (police permissibly brought robbery victim directly to view suspect apprehended shortly after a robbery). Thus, it was not unreasonable for the state appellate court to reject Petitioner's similar claim.

Second, even assuming the procedure was impermissibly suggestive, subsequent in-court identification testimony is nevertheless admissible if "under the totality of the circumstances, the testimony was nevertheless reliable." *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). As discussed above in relation to Petitioner's ineffective assistance of trial counsel and prosecutorial misconduct claims, the victim's identification here of Petitioner was reliable given the circumstances of the crime and the timing and circumstances of her identification. This claim is without merit.

## H.

Besides the claim involving the pretrial email to the victim discussed above, Petitioner asserts in his ninth claim that the prosecutor improperly vouched for the victim's credibility and mischaracterized the nature of Petitioner's letters during closing argument.

To be entitled to habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. *Parker v. Matthews*, 567 U.S. 37 (2012); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

During closing argument, the prosecutor discussed the victim's description of Petitioner to police and how it compared to Petitioner's in-court appearance. *See* ECF No. 11-17 at PageID.967. He suggested that varying descriptions of how darkly-complected Petitioner appeared did not create enough doubt to undermine the accuracy of the victim's identification testimony. He also referred to Petitioner's letter to the victim, asking the jury to consider whether it was meant as intimidation despite its wording. The prosecutor did not misrepresent the evidence or the contents of the letter. He instead properly told the jury, "It was read out loud to you, so you can make your own decision whether or not it was meant to intimidate." *Id.* at PageID.972. The prosecutor further cautioned the jury, "I ask you to rely on your own recollection of the evidence and you can play back testimony." *Id.* at PageID.996. The trial court instructed the jury to consider only the evidence presented at trial, and that the attorneys' arguments were not evidence. *Id.* at PageID.1006–07.

The prosecutor's closing argument was not improper and did not render Petitioner's trial fundamentally unfair. The arguments did not mislead the jury as to the evidence presented, and in any event, the trial court's proper instructions cured any potential prejudice. "[A]rguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde v.*

*California*, 494 U.S. 370, 384 (1990). Petitioner has not demonstrated that the comments were so misleading that they would have been unable to adhere to the trial court's instructions to consider only the evidence presented at trial. *See United States v. Olano*, 507 U.S. 725, 740–41 (1993) (internal quotation marks and alterations omitted).

Petitioner's ninth claim is therefore without merit.

## I.

Petitioner's remaining claims, his tenth, eleventh, and twelfth, were presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. Respondent asserts that review of these claims is procedurally barred because the state courts denied relief based on Petitioner's failure to comply with a state procedural rule requiring his to raise claims on direct review absent a showing of "good cause" and "actual prejudice." See MICH. CT. R. 6.508(D)(3).

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

If a habeas petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479–80 (1986). To be credible, such a claim of innocence requires that petitioner support the allegations

of constitutional error with new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Further, the Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal quotations omitted). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." ECF No. 11-33 at PageID.1905. The Michigan Court of Appeals likewise denied relief by an unexplained order. ECF No. 11-32 at PageID.1648. These orders did not refer to subsection (D)(3) of Rule 6.503, nor did they mention Petitioner's failure to raise his claims on direct appeal as the rationale for rejecting the claims. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained. [A reviewing court] must therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the petitioner's] claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

In rejecting Petitioner's post-conviction claims, the trial court indicated that Petitioner was not entitled to relief because he failed to demonstrate good cause or actual prejudice for failing to raise the new issues on direct appeal, as required by Rule 6.508(D)(2) and (3). ECF No. 11-26 at

PageID.1221–23. The citation to subsection (D)(2) refers to the rule preventing a trial court from considering claims that Petitioner re-raised in his motion for relief from judgment that had been raised previously on direct review, which Petitioner did with respect to a number of his claims. The Court has already found those claims to be without merit as discussed above.

Rule 6.508(D)(3), on the other hand, is a procedural rule requiring a defendant to show "good cause" and "actual prejudice" for his failure to raise new claims on direct review. The claims that Petitioner raised for the first time in his motion for relief from judgment are defaulted under that section. *See Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007).

Petitioner contends that his post-conviction claims are nonetheless preserved for habeas review because his appellate counsel was ineffective for failing to raise them on direct review. Petitioner has made no such showing. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Petitioner raised for the first time in his post-conviction motion. Appellate counsel filed a brief on appeal raising what now form five of Petitioner's habeas claims. Petitioner has not shown that his appellate counsel's strategy in presenting these claims and not raising others was deficient or unreasonable. Indeed,

the post-conviction claims seem particularly weak. Petitioner fails to sufficiently develop the claim that his co-defendant's affidavit could have been used to demonstrate trial error. It is unsurprising that Dunbar claims that he is innocent, and that "Chuck" robbed the victim. That was the suggestion by the defense at trial. Petitioner's claim regarding the Otis affidavit did not, as he suggests, present grounds for a new trial based on new evidence. Littlejohn's credibility was attacked on that basis at trial. Finally, Petitioner's speedy trial claim was also reasonably omitted in favor of his other claims. Because the defaulted claims were not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise them on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682–83 (6th Cir. 2000).

Therefore, review of the claims raised only in Petitioner's post-conviction review proceeding is barred by his procedural default, and he has failed to demonstrate cause or prejudice to excuse the default.

As none of Petitioner's claims merit relief, the petition will be denied.

## IV.

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit or defaulted.

Finally, Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED** that Petitioner's petition for writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

Dated: August 14, 2020

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Eric Smith #**269772, G. ROBERT COTTON CORRECTIONAL FACILITY, 3500 N. ELM ROAD, JACKSON, MI 49201 by first class U.S. mail on August 14, 2020.

s/Kelly Winslow
KELLY WINSLOW, Case Manager